IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. __-__-_____-___-___

AMY PRINCE,

Plaintiff,

v.

PHC-FORT MORGAN, INC., d/b/a COLORADO PLAINS MEDICAL CENTER, a Colorado corporation,

Defendant.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Amy Prince, through her undersigned counsel for her *Complaint,* states as follows:

**INTRODUCTION**

1. This is a civil action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §4301-4335 ("USERRA"). It is brought by Dr. Prince against Defendant PHC-Fort Morgan, Inc., d/b/a Colorado Plains Medical Center ("CPMC").

2. Pursuant to 38 U.S.C. §4323(h)(1), "No fees or court costs may be charged or taxed against any person claiming rights under [USERRA]".

1

## JURISDICTION AND VENUE

3. The Court has jurisdiction over the subject matter of this civil action founded upon federal question jurisdiction, 28 U.S.C. §1331, as conferred by actions arising under USERRA, 38 U.S.C. §4323(b)(1).

4. Venue is proper in this judicial district under 38 U.S.C. §4323(c)(2) because Defendant CPMC maintains a place of business in this judicial district per 38 U.S.C. §4323(c)(2) and is considered a "private employer" for the purposes of 38 U.S.C. §4303(4)(A).

## PARTIES

5. Plaintiff, Dr. Amy Prince, currently resides in Morgan County, Colorado.

6. Defendant CPMC is a private, for-profit company registered as a corporation in the State of Colorado, having a place of business within this court's judicial district, located at 1000 Lincoln Street, Fort Morgan, Colorado. CPMC was and is an "employer" for the purposes of 38 U.S.C. §4303(4)(A) and is subject to suit under USERRA §4323(a).

7. Dr. Prince was at all pertinent times alleged herein employed by CPMC, and also served in the Colorado Air National Guard (CANG). Plaintiff is a qualified employee and member of the uniformed services for purposes of 38 U.S.C. §4303(3), (9), and (16).

8. Whenever and wherever reference is made to individuals who are not named as defendants in this action, but were employees/agents of defendant, or any of them herein, such individuals at all times acted on behalf of the defendants named in this action within the scope of their respective employments and agencies.

9. Whenever and wherever reference is made in this Complaint to any conduct of defendants, or any of them, such allegations or references shall also be deemed to mean the conduct of each defendant, acting individually, jointly and severally.

10. Plaintiff is informed and believes, and on the basis of that information and belief, alleges that all times mentioned in this Complaint, defendants were the agents and employees of their codefendants, and in doing the things alleged in this Complaint were acting within the course and scope of that agency and employment.

## GENERAL ALLEGATIONS

11. Dr. Prince realleges and incorporates herein by reference each and every allegation contained within paragraphs 1 through 10, inclusive, as though set forth at length herein and made a part hereof.

12. Dr. Prince joined the USAFR in August of 2007, then joined the Colorado Air National Guard in December 2015, ultimately being promoted to the rank of Lieutenant Colonel (O-5), and is currently serving as a Flight Surgeon. Her service has been continuous since her original commission in 2007.

13. Dr. Prince began her employment with CPMC in June of 2016 as a pediatrician. She treated children out of a clinic located at CPMC's main medical facility in Fort Morgan. While employed, she instituted a vision screening program for children as young as six-months old, conducted community outreach on topics such as child abuse and child obesity, and was one of, if not the only, pediatrician in her geographical area.

14. Certain times during Dr. Prince's employment, former CPMC Chief Executive Officer Kevin Zachary would encourage Dr. Prince to reschedule her military service times to instead see patients. In doing so, he would state that he could get Dr. Prince out of her military training because he's "done it before."

15. In September of 2020, Dr. Prince informed Defendant that she would be activated on military deployment orders for approximately six months, beginning in April of 2021 and

lasting until October 2021. At no other time in Dr. Prince's employment with CPMC did she take military leave longer than a period of two weeks.

16.     At the time Dr Prince informed CPMC of her intentions to take military leave, CPMC had in effect an employee benefit that paid the difference between an employee's CPMC earnings and their military earnings, if their military earnings were less than their employment earnings while on "Military Leave Due to Military Duty."

17.     Upon information and belief, this policy would have obligated CPMC to pay an estimated $39,000 to Dr. Prince in a ninety day period as the difference between her CPMC earnings and military earnings while she was on military leave, and potentially more if previous versions of the policy effective at that time were not limited to a 90-day period.

18.     In January of 2021, Dr. Prince received her military orders and learned that the length of the deployment starting in April was extended from six months to eight months, lasting until December of 2021.  She provided a copy of these orders to CPMC within one hour of receipt.

19.     On March 30, 2021, Dr. Prince was informed by CPMC CEO Kevin Zachary that CPMC was investigating certain prescriptions made by Dr. Prince. However, the specific alleged wrongdoing or violation related to the prescriptions was never articulated to Dr. Prince. Mr. Zachary informed Dr. Prince that she was suspended on unpaid leave pending the outcome of the investigation.

20.     The next day, March 31, 2021, Dr. Prince received a text message from a colleague at CPMC, Dr. Morgan Hungenberg, stating that Dr. Christina Pavelko informed her that Dr. Prince "no longer worked at CPMC."

21.     On April 7, 2021, Dr. Prince met with Mr. David McCullough, Ms. Ertle, and Ms. Janet Brinkman, at which time she was informed of her termination from her position at CPMC.

She was provided with a termination letter that stated the basis for her termination was for violating the "for cause" provision of her employment agreement. However, the specific offense that warranted "for cause" termination was not stated in the letter.

22.     Dr. Prince's employment agreement with CPMC contains nine separate bases warranting "for cause" termination. During the meeting in which Dr. Prince was terminated, at no point did any of the CPMC employees present verbally articulate the specific offense that warranted the "for cause" termination. Rather, Mr. McCullough referenced the "for cause" basis in the employment agreement that states "[t]he physician conducts himself in a manner in which the employer determined to be unethical or fraudulent…"

23.     However, when prompted by Dr. Prince about which specific activity regarding the prescriptions warranted her termination, Mr. McCullough stated: "I'm not really prepared to go into that kind of detail." Further, Mr. McCullough stated "I can tell you if you look up the statute from the medical board of Colorado… they have specific language that… discourages that type of behavior."

24.     On information and belief, the "statute" referenced by Mr. McCullough is Colorado Revised Statute §12-36-117(1)(x), regarding the standards for a physician prescribing medications to a family member. However, Dr. Prince contends that she never violated this statute, and operated within the bounds of Colorado Board of Medicine Policy 40-18, titled "Self-Treatment and Treatment of Family Members of Others with Whom Significant Emotional Relationship Exists."

25.     When Dr. Prince asked to see the documents used in the investigation, Ms. Brinkman stated that "[t]hey are right now in a closed file for the investigation, so we're not able to share those with you today."

26. At no point during the investigation conducted by CPMC or the meeting in which she was terminated was Dr. Prince asked to make a statement or permitted to defend against the allegations made against her.

27. Ms. Brinkman also stated that the investigation concluded the week prior to the April 7th meeting – mere days after Dr. Prince was alerted of the investigation and that Dr. Pavelko was allegedly telling other CPMC colleagues that Dr. Prince "no longer worked" at CPMC.

28. Documents recovered from CPMC by the Department of Labor during an investigation into Dr. Prince's termination state that Dr. Prince's employment was terminated for improperly writing prescriptions, without stating how she was allegedly doing so.

29. CPMC additionally had in effect a "Corrective Discipline and Behavioral Accountability" policy. This policy does not indicate that the specific conduct by Dr. Prince warranted a "for cause" termination.

30. Dr. Prince's termination from her position with CPMC occurred approximately weeks prior to her expected activation for military service with the CANG, which would begin the period of time that CPMC would be obligated to pay the difference in Dr. Prince's earnings from her military earnings.

## COUNT I
## VIOLATIONS OF 38 U.S.C. §4301 *et seq*.

31. Dr. Prince incorporates by reference the allegations contained in Paragraphs 1 through 30 as if fully restated herein.

32. USERRA prohibits "discrimination against persons because of their service in the uniformed services." 33 U.S.C. §4301(a)(3).

33. Section 4311(a) of USERRA states in relevant part, that a person "who is a member of… performs, has performed,…or has an obligation to perform service in a uniformed service shall not be denied… reemployment, *retention in employment*,… or any benefit of employment by an employer on the basis of that membership,… performance of service, or obligation." (italics added).

34. Section 4311(c) further provides, in relevant part, that "[an] employer shall be considered to have engaged in actions prohibited… if the person's membership… or obligation for service in the uniformed services is a motivating factor in the employer's action."

35. A "benefit of employment" is defined as:

> The term 'benefit', 'benefit of employment', or 'rights and benefits' means the terms, conditions, or privileges of employment, include any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations and the opportunity to select work hours or location of employment.

38 U.S.C. §4303(2).

36. In the Department of Labor's Fiscal Year 2010 report to Congress (published in July 2011), the department clarified its interpretation that a "benefit of employment" included freedom from workplace harassment and/or a hostile work environment:

> The Department of Labor considers it a violation of USERRA for an employer to cause or permit workplace harassment, the creation of a hostile working environment, or to fail to take prompt and effective action to correct harassing conduct because of an individual's membership in the uniformed service or uniformed service obligations.

Department of Labor (USERRA) Fiscal Year 2010 Report to Congress.

37.     USERRA's definition of "service in the uniformed services" covers all categories of military training and service, including duty performed on a *voluntary* or *involuntary* basis, in time of peace or war. 38 U.S.C. §4312(e)(1)(A)(i); 20 C.F.R. §1002.115. (italics added).

38.     Dr. Prince's protected status as a CANG member was a substantial and motivating factor in Defendant CPMC terminating Dr. Prince's employment without good cause.

39.     As a direct and proximate result of the conduct of Defendant as set forth in this count, Dr. Prince has suffered injuries and damages, including, but not limited to, loss of past earnings and benefits, and loss of future earnings and benefits, all amounts to be proven at trial.

40.     Plaintiff alleges that Defendant had knowledge of Plaintiff's USERRA protections, and that Defendant's subsequent violations of USERRA were willful and requests liquidated damages in an amount equal to the amount of his lost wages and other benefits pursuant to 38 U.S.C. §4323(d)(1)(C).

41.     Pursuant to 38 U.S.C. §4323(h)(2), Plaintiff further requests an award of reasonable attorney's fees, expert witness fees, and litigation expenses.

## **PRAYER FOR RELIEF**

**WHEREFORE**, based upon the foregoing, Plaintiff prays for the following relief against Defendant:

1.     Declaration that Defendant's actions and practices complained of herein are unlawful and in violation of USERRA, 38 U.S.C. §4301, *et seq*.;

2.     Require that Defendant fully comply with the provisions of USERRA by providing Plaintiff all employment benefits denied to her as a result of the unlawful acts and practices as complained herein.

3.     Fees and expenses, including attorneys' fees pursuant to 38 U.S.C. §4323(h)(2);

4. Award Plaintiff prejudgment interest on the amount of lost wages or employment benefits found due;

5. Order that Defendant pays compensatory and/or liquidated damages in an amount equal to the amount of lost compensation and other benefits suffered by reason of Defendant's willful violation of USERRA;

6. Grant an award for costs of suit incurred; and

7. Grant such other further relief as may be just and proper, and which Plaintiff may be entitled to under all applicable laws.

Dated:  April 27, 2022

| | |
|---|---|
| /s/ Brian J. Lawler | /s/ Kevin Wilson |
| Brian J. Lawler, Esq. | Kevin Wilson, Esq. |
| CA SBN: 221488 | KBA No: 96888 |
| PILOT LAW, P.C. | KEVIN WILSON LAW PLLC |
| 850 Beech Street, Suite 713 | 3110 Horton Avenue |
| San Diego, CA  92101 | Louisville, KY 40220 |
| Telephone: (866) 512-2465 | Telephone: (502) 354-3330 |
| blawler@pilotlawcorp.com | kevin@klwilsonlaw.com |
| Attorney for Plaintiff | Attorney for Plaintiff |

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues triable as of right by a jury in this Complaint pursuant to Federal Rule of Civil Procedure 38(b).

Dated:  April 27, 2022

| | |
|---|---|
| /s/ Brian J. Lawler | /s/ Kevin Wilson |
| Brian J. Lawler, Esq. | Kevin Wilson, Esq. |
| CA SBN: 221488 | KBA No: 96888 |
| PILOT LAW, P.C. | KEVIN WILSON LAW PLLC |
| 850 Beech Street, Suite 713 | 3110 Horton Avenue |
| San Diego, CA  92101 | Louisville, KY 40220 |
| Telephone: (866) 512-2465 | Telephone: (502) 354-3330 |
| blawler@pilotlawcorp.com | kevin@klwilsonlaw.com |
| Attorney for Plaintiff | Attorney for Plaintiff |